### JACKSON v. SADLER et al.

No. 25180. April 30, 1935.

E. L. Kirby and W. R. Banker, for plaintiff in error.

Ernest R. Brown, for defendants in error.

PER CURIAM. This controversy is wholly between the plaintiff in error and the defendant in error M. L. Sadler. There has been no change in the relative position of these two parties since the action was instituted, and they will be referred to herein as plaintiff and defendant, as they appeared in the trial court.

The plaintiff commenceed this action as a taxpayer for and on behalf of himself and other taxpayers similarly situated to set aside a deed that was made, executed, and delivered by the chairman of the board of county commissioners of Mayes county to the defendant conveying to the defendant four lots of the original town of Pryor. The county had previously acquired the property through the medium of a tax resale. There is no controversy here as to the validity of the tax resale or the legality of the tax sale leading up to the resale. The persons who owned the property prior to the tax sale are no longer interested in it. The thing involved here is the validity of the deed which the county gave to the property after the county acquired ownership thereof at the tax resale. After the original owner of the property was divested of title by these tax sales and the county became the owner thereof in this manner, the chairman of the board of county commissioners made, executed, and delivered to the defendant a deed conveying this property. The property was disposed of by the county to the defendant under the provisions of section 9745, C. O. S. 1921, as amended by section 5 of chapter 158 of 1923 Session Laws (sec. 12755, O. S. 1931), which reads as follows:

"Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice apply to the board of county commissioners for its approval of said sale and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

Thereafter the county acting by and through its board of county commissioners filed suit in the district court of Mayes county, having for its purpose the concellation of the deed to defendant conveying this

property. That suit was predicated upon the ground that the defendant had failed and refused to comply with the stipulations of the deed as to consideration, and by reason thereof the deed should be held void and canceled. The defendant in that case was the same person as the defendant in the present case. The deed attacked in that case is the same deed that is attacked in the case at bar. In the former case the defendant filed an answer and cross-petition and made the persons who were owners of the property prior to each of the tax sales parties to that former case, and later a judgment was rendered in the former case holding that defendant's deed to the property was valid and quieting his title thereto as against not only the county, but the persons who owned the property before any tax sale or resale was had. The county took no appeal from the judgment in that case. The former owner of the property attempted to appeal, but it was dismissed and the judgment in that case became final.

Thereafter the plaintiff in the present case filed the case at bar. He does not claim that he owns or ever owned any interest in the property. He brings the suit as a taxpayer of Mayes county for and on behalf of himself and others similarly situated. He alleges that the sale of the property to the defendant was void, and that the deed evidencing the transaction is by reason thereof illegal and void, and that the judgment that was rendered in the former case is not a bar to this suit. The defendant alleges that the sale of this property to him by the county was valid and that the deed that has been attacked conveyed to him a valid title to this property. He alleges further that the issues of this cause have already been determined in the former suit above referred to; that the former suit involved the same parties and the same subject-matter as are involved in the case at bar; that by reason thereof the judgment in the former case is res adjudicata and that the plaintiff cannot relitigate these matters.

The trial court found generally on all issues in favor of the defendant, and plaintiff has appealed.

The first question to be determined is whether or not the deed under which defendant holds is void. It will be remembered that this is not an action on the part of the owner of the property to set aside a tax deed or resale tax deed to property, the title to which has been taken from him

by a tax sale or resale. Therefore, the rules relating to tax deeds generally are not applicable here. This is an equity action on behalf of the plaintiff as a taxpayer to cancel a deed that the county has given to property that it acquired through a tax sale and resale. Plaintiff says in the first place that the deed is void because there was no approval thereof by the board of county commissioners. The statute governing this transaction does provide that a sale of this kind must be approved by the board of county commissioners. This statute, section 9745, C. O. S. 1921, as amended by section 5 of chapter 158 of 1923 Session Laws (sec. 12755, O. S. 1931), provides:

"Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice by publication be approved by the board of county commissioners."

The trial court held adversely to plaintiff on this point. An examination of the record supports the finding of fact that the sale was properly approved. In the first place it is presumed that the board of county commissioners properly discharged their duties in approving this deed before they permitted the chairman of the board to execute and deliver it. The county commissioners are public officers and are presumed to properly discharge the duties which the law imposes upon them.

In the case of Bonaparte v. Nelson, 142 Okla. 54, 285 P. 100, this court said:

"The excise boards, like municipal boards and other public officers, are presumed to discharge the duties which the law imposes upon them, and the same is true relative to the board of county commissioners * * * and in the absence of proof it will be presumed that the officers upon whom acts and duties are enjoined by law performed those duties. This presumption continues in favor of the acts of such officers until it is affirmatively shown by competent evidence to the contrary."

Plaintiff's testimony fails to overcome this presumption. The only witness offered by plaintiff upon the question of whether or not the sale was approved was the deputy county clerk, who testified that he had searched the records in the county clerk's office and had failed to find any resolution or other document evidencing approval of the sale. He further testified that all the transactions concerning the sale, however, transpired prior to the time he began his duties in the clerk's office, and that he did not know whether the sale was approved by the board of commissioners or not. On

the other hand, the defendant showed by the witness Carman that he was county clerk of Mayes county from January 5, 1925, to January 5, 1931, which covered the entire period of the transactions concerning this sale; that he remembered the sale of this property to the defendant, and that on December 6, 1927, a resolution was presented to the board of county commissioners for the approval of this sale, and that the sale was approved and the resolution was signed by the chairman of the board of county commissioners; that Mr. Brown, attorney for the defendant, later came in and requested that the order be published; that the witness objected to its being published because it was a long drawn out resolution or order, but that the commissioners, or Mr. Brown, himself, said it should be published and the order was taken over to the newspaper and published. The body of the resolution itself was published in the local newspaper and appears in the record.

J. R. Leach testified that he was chairman of the board of county commissioners at the time these transactions occurred; that while he had no independent recollection of the matter of the sale, he signed all of the papers that were brought to him in connection with the sale that were to be signed. The trial court's finding against the plaintiff on this feature is not against the evidence.

For his second ground of attack upon this deed, plaintiff says that the sale was void because no proper notice of application for approval was given. The statute authorizing this sale does not prescribe the number of times the notice of a sale of this kind shall be published. It simply provides that the property may be sold by the treasurer "* * * after notice by publication. * * *" The undisputed testimony is that the notice of sale was published in the Mayes County Democrat four times beginning on November 17, 1927, and ending on December 8, 1927. There is no merit in the contention that there was a failure to give notice of this sale.

The third reason assigned by the plaintiff in support of his contention that the deed is void is that he alleges that the consideration was not a cash consideration, and for that further reason the deed is void. We find that the sale was for a cash consideration. The property sold for the sum of $25 and that amount was paid by defendant to the county. That part of the deed with reference to consideration so

recites. While it is true that the deed contains a recitation in another paragraph to the effect that the defendant agrees to pay all special taxes then due and delinquent, and to pay taxes which are provided by law, that statement in the deed has nothing to do with this conveyance. It is surplusage. The special taxes referred to in that clause of the deed evidently mean paving and sewer assessments and the like in the town of Pryor, moneys that are due the holders of paving bonds and sewer warrants, a matter in which the county has no direct interest, and as to the ad valorem taxes to accrue against the property from and after the sale the law itself enjoins upon the defendant the duty to pay such taxes.

It was within the discretion of the board of county commissioners to approve this sale. There is nothing in the record to warrant the court in going into the question of adequacy or inadequacy of the consideration. The record shows that on account of the conflicting contentions of the former owners of this property and others, it was practically impossible to obtain a bid on the property of any kind; that the county authorities were anxious to get the property upon the tax rolls and in their discretion the county commissioners approved the sale. No fraud is proved and no error was committed by the trial court in refusing to disturb this sale on account of the consideration. The judgment of the court upholding the deed provides that the title of defendant is quieted upon the condition that the defendant will pay all the taxes, both paving and general, upon the property for the year 1928, for the year 1929, and the ad valorem taxes for the years 1930-1931 and 1932. If there were any question about the consideration of $25 being inadequate or inequitable, such question is eliminated by this provision of the judgment.

The judgment of the trial court upholding the validity of this deed is supported by the evidence. The rule is well recognized that where a case is purely of equitable cognizance, this court has on appeal the power to go into, examine, and weigh the evidence, but if the judgment of the trial court is not clearly against the weight of the evidence, it will not be disturbed. Mitchell v. Leonard, 55 Okla. 626, 155 P. 696. There is no error in the judgment of the trial court holding the deed valid.

There is likewise no error in the finding

of the trial court to the effect that this controversy has been formerly adjudicated and that the judgment in the former action is res adjudicata. The former suit was prosecuted by the board of county commissioners of Mayes county. It had for its purpose the cancellation of the identical deed involved in the case at bar. The defendant M. L. Sadler, in the former case, is the identical M. L. Sadler who is the defendant in the present case. The only difference between the former case and the present case is that the former case was filed by the board of county commissioners for and on behalf of the county, while the present case is filed by the plaintiff as taxpayer for and on behalf of himself and other taxpayers. The prior case resulted in a judgment in favor of the defendant quieting his title to the property as against the county and also against the persons who owned the property prior to the time it was sold for taxes. That judgment became final and is a bar to the claim of plaintiff in the present case.

The board of county commissioners of a county is authorized by law to file and prosecute in the name of the board a suit by the county to recover real property previously acquired and disposed of by the county pursuant to the statutes relating to tax resales. In the absence of fraud or collusion, a judgment rendered in such cause is binding and conclusive upon the county and all residents, citizens, and taxpayers therein who have no special interest in the property. A subsequent suit filed by a taxpayer whose only interest is his general interest · as a taxpayer against the same parties and involving the same subject-matter, is barred by the judgment in the former action. The former action was authorized by section 7364, O. S. 1931, which provides that, in all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners. The general rule relating to the binding effect of the former suit is stated in 34 C. J. 1028, as follows:

"In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district or board of officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general and public interest, such as questions relating to public property, contracts, or other obligations. * * *"

The Supreme Court of California, speaking through Mr. Justice Preston in Price v. Sixth District Agricultural Association, 285 P. 387, said:

"The principle above announced is of universal application."

In the case of Eaton v. Mooresville Graded School District, 184 N. C. 471-473, 114 S. E. 689, the court said:

"Judgment against a governmental body or in its favor, affecting a matter of general interest to all the people in the territory, is binding not only on the representative but on all the citizens of the territory, though not made parties plaintiff or defendant by name."

In Freeman on Judgments (3rd Ed.) sec. 178, supported by the case of Stone v. Winn, 165 Ky. 9, 176 S. W. 933, the rule is well stated as follows:

"A judgment against a county or its legal representatives, in a matter of general interest to all its citizens, is binding upon the latter, though they are not parties to the suit."

In the Eaton Case, supra, it is thus observed:

"If this were not so, each citizen, and perhaps each citizen of each generation of citizens, would be at liberty to commence an action and to litigate the question for himself."

In the Stone Case, supra, it is thus observed:

"If a judgment against the county in its corporate capacity does not bind the taxpayers composing the county, then it would be difficult to imagine what efficacy could be given to such a judgment."

An examination of the record fails to show any fraud or collusion in the rendition of the judgment in the former case. It is elementary that fraud is never presumed, but must be proved.

In the case of Comanche Ice & Fuel Co. v. Binder & Hillery, 70 Okla. 28, 172 P. 629, the court said:

"When a matter has once passed to final judgment, without fraud or collusion, in a court of competent jurisdiction, it has become res judicata, and the same matter between the same parties or their privies cannot be reopened or subsequently considered."

The plaintiff in the present case is the same in effect as plaintiff in the former case. Plaintiff in the former case sought to do the identical thing that the plaintiff in the present case seeks to do, seeking the

same relief against the same defendant involving the identical subject-matter.

The case of Kiniry v. Davis, 82 Okla. 211, 200 P. 439, holds:

"The judgment of a court of competent jurisdiction upon the merits is conclusive between the parties and those in privity with them, and the facts therein adjudicated can never thereafter be contested between them in another action merely upon a different theory, where the primary purpose and effect of the subsequent action is the same as that of the former action, and where the material facts of the subsequent action were, or might have been, presented as constituting the claim or defense in the former action."

In the case of Sparks v. Gallagher, 114 Okla. 103, 243 P. 228, this court held that a party prosecuting a lawsuit, or causing it to be done in another name, and whose property right is adjudicated thereby, is estopped by final judgment therein from again litigating the questions involved.

In the case of Ellison v. Hodges, 71 Okla. 17, 174 P. 1089, this court held that a suit against a consolidated school district by one of the several districts comprising the consolidated district, in which the validity of a bond issue by the defendant is upheld, is res adjudicata in an action of the other constituents of the district against the same defendant, involving the same question.

The rule here stated is further supported by the opinion of this court in the case of Hatchett v. Basil et al., 165 Okla. 159, 25 P. (2d) 628. In that case it is held that the final judgment of a district court canceling a tax deed or deeds executed by the county treasurer to the chairman of the board of county commissioners is binding upon officers against whom the suit was instituted as well as a party who is attempting to secure a tax deed from the chairman of the board of county commissioners as provided for in section 9745, C. O. S. 1921, as amended by section 5 of chapter 158, Session Laws 1923 (sec. 12755, O. S. 1931), **where said party has no vested right in the property.**

Upon the question of whether or not the judgment in the former action is res adjudicata, the plaintiff relies upon the case of Airy v. Thompson, 154 Okla. 1, 6 P. (2d) 445. That case does not involve the question here presented. In that case it is not shown that the former judgment referred to was rendered for or against the county or any one lawfully representing the county, involving the same parties and the same subject-matter as were involved in the Airy Case. In the present case, however, it is shown that the former case involved the same parties and the same subject-matter as the case at bar.

We hold that plaintiff's suit is barred by the judgment of the court in the former case.

The judgment of the trial court is in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys W. L. Farmer, J. H. Everest, and Charles E. France in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Farmer and approved by Mr. Everest and Mr. France, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.